IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILETTA SHONDELL BAILEY,     *

       Plaintiff,     *

vs.     *     Civil Action No. ADC-16-3181

NANCY A. BERRYHILL,     *
Acting Commissioner,
Social Security Administration,     *

       Defendant.     *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On September 19, 2016, Wiletta Bailey ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* ECF No. 1 ("the Complaint"). After consideration of the Complaint and each parties cross-motions for summary judgment (ECF Nos. 15 and 18), the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the decision of the Social Security Administration is AFFIRMED.

### PROCEDURAL HISTORY

On February 4, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning on September 1, 2007. Her claims were denied initially and upon reconsideration on May 9, 2011 and October 12, 2011, respectively. Subsequently, on November 14, 2011, Plaintiff filed a written request for a hearing and, on November 27, 2012, a hearing

1

was held before an Administrative Law Judge ("ALJ"). On March 1, 2013, the ALJ rendered a decision ruling that Plaintiff was not disabled under the Social Security Act. *See* ECF No. 12-3. Plaintiff sought review of the ALJ's March 1, 2013 decision in this Court and subsequently, the parties jointly moved to remand this case for further proceedings before the Commissioner. On June 18, 2015, this Court granted the parties joint motion for remand to the Commissioner. On February 26, 2016 and June 10, 2016, two additional hearings were held before the ALJ and on July 19, 2016 the ALJ again rendered a decision ruling that Plaintiff was not disabled under the Social Security Act.

On September 19, 2016, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's July 19, 2016 decision.[1] On February 3, 2017, Plaintiff filed a Motion for Summary Judgment. On March 29, 2017, Defendant filed a Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement and Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). However, the Court does not conduct a de novo review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *see*

---

[1] On May 3, 2017, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

*also Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence."). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.").

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d at 653 (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB, a claimant must establish that she is under disability within the meaning of the Social Security Act. The term "disability," for purposes of the Social Security Act, is defined as the "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Social Security Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that, "[i]f at any step a finding of disability or non-disability can be made, the [Commissioner] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of 12 months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c), 416.909.

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96–8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir.1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual

alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96–7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.*

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. At steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012); *See also Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not

disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 1, 2007. ECF No. 12-9 at 8. At step two, the ALJ found that Plaintiff had the severe impairments of status/post abdominal and breast surgeries; migraines, depression, anxiety, seizures, and Raynaud's disease. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ determined that Plaintiff had the residual functional capacity to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she could occasionally lift and or carry ten pounds and frequently lift and or carry less than ten pounds. She could stand or walk for a total of two hours in an eight-hour workday and sit for a total of six hours in an eight-hour workday. She could push or pull as much as she can lift and or carry. She could occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, or crouch but can never crawl. She can occasionally be exposed to hazards such as moving mechanical parts and unprotected heights but cannot operate a motor vehicle. She can only occasionally be exposed to extreme cold. She can frequently handle and finger. She can constantly understand, remember and carry out instructions concerning simple tasks and ca[n] frequently understand, remember and carry out instructions concerning detailed tasks.

*Id.* at 6. The ALJ then determined that Plaintiff "ha[d] no past relevant work [.]" *Id.* at 10.

Finally, at step five, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 11. Thus, the ALJ concluded that, "[T]he claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2007, through the date of this decision [.]" *Id* at 12.

## DISCUSSION

Plaintiff raises two allegations of error on appeal: (1) that the ALJ's assessment of Plaintiff's Raynaud's disease was not supported by substantial evidence; and (2) that the ALJ erred in affording little weight to the opinions of Plaintiff's treating consultative examiner and treating social worker. Both of these arguments lack merit and are addressed below.

### A. The ALJ's assessment of Plaintiff's Raynaud's disease was supported by substantial evidence.

Plaintiff first argues that the ALJ's assessment of her Raynaud's disease was not supported by substantial evidence. Plaintiff's primary contention is that the medical record supported the ability for only occasional handling and fingering, rather than the ability for frequent handling and fingering as was found by the ALJ. She argues that the ALJ "does not explain how the medical evidence would support a finding of ability to frequently handle and finger as opposed to a greater restriction for occasional handling and fingering." ECF No. 15-1 at 17. The Court disagrees.

In his decision, the ALJ considered and summarized the evidence relating to Plaintiff's Raynaud's disease specifically noting the Raynaud's diagnosis by Dr. Mahesh Chandra and the various complaints made by Plaintiff regarding her difficulties with holding and grasping objects during Raynaud's flare ups. See ECF No. 12-9. He noted that "when [Plaintiff's] Raynaud's syndrome acts up it is difficult to grasp and manipulate small objects" and that the Plaintiff had complained of "difficulty holding and grasping objects during flare-ups." *Id.* at 12. Based on that evidence, the ALJ concluded that "the claimant cannot *constantly* finger and feel with the upper extremities." *Id.* at 14 (emphasis added). The ALJ further noted that there was "very little" mention of Plaintiff's Raynaud's disease in the record but despite that fact, the ALJ accommodated Plaintiff's Raynaud's disease in the resulting RFC. *See id.* ("The undersigned has

8

also considered the claimant's Raynaud's disease as directed by the Appeals Council. Very little of this is mentioned in the record, but based on the diagnosis and the claimant's testimony, the undersigned has given some limitations and fingering and feeling.").

The ALJ's findings with regard to the functional limitations caused by Plaintiff's Raynaud's were consistent with Plaintiff's own subjective statements about the effects of her Raynaud's disease. At the hearing, Plaintiff testified as follows:

> Q: Do you have problems using your fingers and hands to do activities? Say brushing your teeth, eating with a fork and knife, things like that?
> A: Usually depending on how cold it is or how stressed out I am because of my Raynaud's. So they do go numb and tingly a lot.
> Q: And so when they're numb and tingly, --
> A: They look blue.
> Q: --so do you have any problems with your hands?
> A: Yeah.
> Q: Okay. And what problems do you notice from that?
> A: Well, the tingly, it's kind of hard to pick up stuff and, because I really can't feel them.
> Q: How long has this been a problem with you?
> A: The Raynaud's?
> Q: Uh huh.
> A: Since, well, I found out in 2008 when I had found out about my [inaudible] prolapse that I had Raynaud's.
> Q: So other than taking things for that, do you have any issue using your hands? Are you able to open up a door with a door knob?
> A: Yes. As long as it's, the Raynaud's isn't acting up, they're fine. But like right now when they're blue like that, it's hard to –
> Q: Do you have any strength in your hands?
> A: Very little.
> Q: Can you tie showed, tie your shoe laces and –
> A: No.
> Q: What about drinking from a glass?
> A: Not when they like this.
> Q: What do you do to make them warm back up?
> A: What I'm doing now. Technically I'm supposed to have special gloves and socks, but I can't afford them.
> Q: And do you have the same problems with your feet?
> A: Yes.
> Q: Do you have any problems with standing or walking because of the Raynauds?
> A: Yes.
> Q: How often do you have the Raynaud's flare up?

> A: If I'm stressed it flares and if it's cold. Anything under 60 degrees is pretty much freezing for me.
> Q: And then how long does the flare-up last?
> A: Until I can get totally warm. Or unstressed.

The Court finds that the above testimony supports the ALJ's finding that Plaintiff was limited to "frequent" rather than "occasional" handling and fingering. Social Security Ruling 83-10 defines the term "frequent" as "occurring from one-third to two-thirds of the time" whereas the term "occasionally" is defined as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5-6. Thus, in order to support the functional limitation of only "occasional" handling and fingering, there must be evidence that Plaintiff's Raynaud's symptoms limited her to roughly two hours of handling and fingering in an eight hour workday. *See* SSR 83-10, 1983 WL 31251, at *5 ("Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than 2 hours of an 8-hour workday."). At the hearing, Plaintiff did not testify that she suffered from the Raynaud's symptoms all or even most of the time. Instead, Plaintiff reported that her Raynaud's symptoms only acted up in situations where she was either stressed or cold. There is simply no evidence that Plaintiff experienced Raynaud's symptoms on such a regular basis to merit a limitation to only "occasional" handling and fingering, In fact, Plaintiff's own statements seem to contradict that contention. Moreover, the ALJ included in Plaintiff's RFC an additional occupational limitation of only occasional exposure to extreme cold to further limit the instances in which Plaintiff would experience her Raynaud's symptoms while working.

Thus, the Court finds that the resulting RFC properly accounted for the functional limitations caused by Plaintiff's Raynaud's disease and the limitation of "frequent" handling and fingering was well-supported by Plaintiff's hearing testimony and the medical evidence in the record. Consequently, Plaintiff has shown no error in the decision rendered by the ALJ.

## B. The ALJ properly evaluated the opinion of Plaintiff's treating consultative examiner and social worker.

Plaintiff argues that the ALJ, in determining Plaintiff's mental RFC, erroneously discredited the opinions of consultative examiner Dr. George J. Moore and social worker Lisa Larrabee. Plaintiff contends that, in doing so, the ALJ failed to properly weigh the opinion evidence.

Section 404.1527 of the regulations governs an ALJ's consideration of the medical opinion given by a treating source. See 20 C.F.R. § 404.1527(d). That regulation defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s), including ... what [the claimant] can still do despite impairment(s)...." 20 C.F.R. § 404.1527(a)(2). The regulations further explain that "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. See 20 C.F.R. § 404.1513(a)(1)-(5). Finally, the regulations provide that a medical source statement about what a claimant can still do despite his or her impairment(s) should be "based on the acceptable medical source's findings" that are supported by a combination of medical history, clinical findings, laboratory findings, diagnoses, and prognoses. See § 404.1513(b); see also SSR 96–5p, 1996 WL 374183, *4 ("Medical source statements are medical opinions submitted by acceptable medical sources.") (citing § 404.1513(a) and 20 C.F.R. 416.913(a)).

Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. §

11

404.1527 (2005). Under the treating physician rule, an ALJ must generally give more weight to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(2). However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (superseded by statute on other grounds). In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion: (1) length and frequency of treatment relationship; (2) nature and extent of treatment; (3) supportability, consistency, specialization, and (4) any other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1-6). An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion. *Carter v. Astrue*, 2011 WL 3273060, at 6 (D. Md. July 27, 2011). In addition, the ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(c)(2).

The factors used to determine the weight to be accorded the opinions of physicians and psychologists ("acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level ("other sources"), including but not limited to licensed clinical social workers, chiropractors, and therapists. *See*

SSR 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. § 404.1513(d)(1). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of these "other sources" and the reasons behind the weight given. *See* SSR 06-03p, 2006 WL 2329939, at *6.

Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. SSR 06-03p, 2006 WL 2329939, at *5. Finally, not every factor for weighing opinion evidence will apply in every case. *Id.* The evaluation of an opinion from a medical source that is not an "acceptable medical source" depends on the particular facts in each case. *Id.* Thus, each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case. *Id.*

Plaintiff's contention that the ALJ "failed to provide a support rationale for rejecting the opinions from Dr. Moore and Social Worker Larrabee" (ECF No. 15-1 at 20) is without merit. The ALJ in this case explicitly discussed and weighed the findings and conclusions of Dr. Moore and social worker Larrabee. With regard to the opinion of Dr. Moore, the ALJ concluded that it deserved little weight because it was based solely on Plaintiff's subjective complaints about her symptoms made during a single examination. ECF No. 12-9 at 13 ("Very little weight is given to the opinion of George J. Moore, D.O. who examined the claimant on April 6, 2011 (Exhibit 4F). Dr. Moore reached his opinion solely on the symptoms recited by the claimant during the interview.") In addition, the ALJ explained that Dr. Moore did not describe how the symptoms

Plaintiff described prevented her from working and made note of Dr. Moore's failure to consider any other reasons why the Plaintiff might not be working. *Id.* ("[Dr. Moore] opined that the claimant's lack of employment was due to her symptoms but did not describe how those symptoms prevented work or consider other possible reasons the claimant has not been working."). Furthermore, the ALJ pointed to numerous inconsistencies between the evidence and Dr. Moore's conclusions stating as follows:

> [Dr. Moore] opined the claimant would not be able to handle the normal stresses of a work environment but never asked any questions or got any information about how the claimant responds to stress other than her statements: "I get mad at people," and "I'm very irritable and very frustrated. I want people to just leave me alone." In fact, the record reflects no interpersonal conflicts during the period at issue. He also opined claimant is unable to focus sufficiently to persist on tasks required in the work setting, but she performed quite well on the mental status examination. The claimant herself says she does not have difficulty with concentration or persistence. (Exhibit 29F, pg. 17).

ECF No. 12-9 at 13.

With regard to social worker Lisa Larrabee's opinion that Plaintiff would have marked difficulty using public transportation and marked limitations in concentration, persistence, and pace, the ALJ concluded that her opinion deserved little weight because it was inconsistent with Plaintiff's own statements that she had no problems using public transportation or with concentration. *Id.* ("Very little weight is given to the opinion of a licensed clinical social worker who opined the claimant would have marked difficulty using public transportation and marked limitations in concentration persistence or pace because the claimant herself said she had no problems doing these things. (Exhibit 29F, pg. 17)"). In addition, the ALJ noted that the lack of evidence of interpersonal conflicts contradicted social worker Larrabee's conclusion that Plaintiff had marked difficulties with social interactions. *Id.* ("Similarly, marked difficulties in social interactions is not supported by the record, which contains no evidence of interpersonal

conflicts during the period at issue."). Finally the ALJ noted that "[t]he opinion that the claimant would miss four days of work per month is a subjective prediction of the subjective effects of subjective symptoms and also is given very little weight." *Id.*

In reviewing for substantial evidence, the Court must determine whether the ALJ considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d at 439–40. As stated previously, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. Here, contrary to Plaintiff's contention, the ALJ weighed each opinion against the evidence in the record and clearly articulated the reasoning for the weight afforded. Thus, the Court finds no error in the ALJ's evaluation of the opinion evidence. Moreover, the ALJ's assessment of the opinion evidence was supported by substantial evidence in the record. Consequently, the Court rejects Plaintiff's final allegation of error.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence in support of the finding that Plaintiff was "not disabled" within the meaning of the Social Security Act. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED, and the decision of the Social Security Administration is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 23 June 2017

A. David Copperthite
United States Magistrate Judge